United States District Court
Southern District of Texas
**ENTERED**
September 27, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| WILLIAM MANER, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 3:15-CV-191 |
| § | |
| DIGNITY HEALTH; fka CATHOLIC § | |
| HEALTHCARE WEST, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, William Maner, filed this lawsuit against his former employer, Dignity Health, claiming that he was unlawfully terminated on the basis of sex, that he was unlawfully retaliated against after complaining of workplace discrimination, and for breach of contract. Dkt. 1. Dignity Health has filed a Motion to Dismiss under Federal Rules 12(b)(2) and 12(b)(3), contending that this Court lacks personal jurisdiction over it and, alternatively, that this is not the proper venue for Maner's lawsuit.

After considering the motion, the response, the briefing and arguments of the parties, and the record as a whole, the Court finds that the Motion to Dismiss for Lack of Personal Jurisdiction should be **GRANTED**. Because the Court finds that it lacks personal jurisdiction over Dignity, the Court does not address the arguments regarding improper venue.

## BACKGROUND

Maner's Complaint alleges that he was employed as a Bio-Med Design Engineer ("BMDE") for Dignity Health at Saint Joseph's Hospital and Medical Center in Phoenix, Arizona. Maner alleges that he worked in a team of about six BMDEs and Research Scientists under the supervision of Dr. Robert Garfield ("Garfield"). Maner described his work as "about 95% of computer or online work, analyzing data" and travel to a remote location at least once a year. Maner alleges that Garfield discriminated against male employees, in favor of Garfield's "live-in [female] partner" Leelie Shi ("Shi"). Maner alleges that Garfield ensured that Shi remained employed over her more qualified male counterparts. Although an internal investigation took place some time in 2010, Maner failed to report Garfield's alleged discrimination, due to a fear of termination.

In December of 2010, Maner "relocated to Texas." However, prior to Maner's move, he alleges that Dignity and Garfield agreed to allow him to continue working, performing remotely from Texas. Specifically, Maner alleges he was granted permission to work from three locations "for an extended period of time": his home, the University of Texas Medical Branch ("UTMB"), and Reproductive Research Technologies ("RRT").[1]

---

[1] Under Federal Rule of Evidence 201, the Court takes judicial notice, *sua sponte*, of related litigation that Maner filed against RRT and Garfield. *See Maner v. Reproductive Research Technologies, LP*, Cause No.4:15-cv-1567, in the Southern District of Texas, Houston Division. Maner claims that RRT breached an employment contract with him and then subsequently infringed on his copyright. Maner's complaint makes no mention of his current allegation that Garfield allowed him to work remotely for Dignity after he moved to Texas, and in fact instructed him to work in Texas "for the benefit of Dignity." Instead, he claims that RRT was

In August 2011, Maner alleges that Garfield gave him an "extremely negative employee performance evaluation." Thereafter, Maner filed a complaint with Dignity's Human Resources Department alleging that Garfield's evaluation was "fabricated." Maner contends that Dignity "did not investigate [his] complaint."

On October 11, 2011, Maner again complained to Dignity's Human Resources Department, this time specifically raising the allegation of "sex discrimination by Garfield." Again, Maner alleges that Dignity did not investigate his complaint. Instead, six days later, on October 17, 2011, Maner was terminated due to an alleged "reduction of force." However, Maner alleges that he was in fact terminated "due to his sex and as retaliation for his complaining about unlawful discrimination." Maner contends that Shi was not terminated.

Maner further complains that Dignity breached its own internal policies regarding credit and compensation for intellectual property by employees. Maner alleges that Dignity listed Shi as an author and inventor on publications and patents that arose from Garfield's laboratory, despite Shi not actually working with Garfield.  In contrast, Maner claims that, after he complained of Garfield's discrimination, Dignity "refused to list [him] as an author or inventor" for the work he performed. As a consequence, Maner alleges that he suffered a loss of "professional value" and a reduction in income.

---

his employer, even reimbursing him for gas money when he travelled to RRT in Houston. Maner also alleges that Garfield is a member of RRT's "Senior Management Team," as well as the owner of a third company, Reproductive Health Technologies, Inc. Again, however, he does not make any mention of Dignity Health or the allegations in this lawsuit. Similarly, his Initial Disclosures in that case do not mention Dignity Health or the facts alleged in this lawsuit. Dkt. 20.

Maner asserts claims under Title VII and the Texas Labor Code for unlawful termination on the basis of sex and unlawful retaliation for reporting discrimination. He also asserts a breach of contract claim.

Dignity has moved to dismiss this case on the grounds that this Court lacks jurisdiction over it, and that this Court is an improper venue.

## APPLICABLE LAW

### A. Rule 12(b)(2) Standard

Rule 12(b)(2) of the Federal Rules of Civil Procedure governs dismissal for lack of personal jurisdiction. When a nonresident defendant challenges personal jurisdiction, the plaintiff has the burden of demonstrating facts sufficient to support jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id*. The court "must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction." *Luv N' care, Ltd. v. Insta–Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006) (internal citations omitted).

This Court may exercise personal jurisdiction over a nonresident defendant when "(1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Since the Texas long-arm statute extends to the limits that due process allows, courts in Texas need only consider the second step in the inquiry. *Id.*

The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a nonresident defendant when: "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000) (citations and internal quotation marks omitted); *see also International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The "minimum contacts" requirement can be met through contacts sufficient to confer either specific or general personal jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). To establish specific personal jurisdiction, the plaintiff bears the burden of showing that the "defendant ... purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there." *17 Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002). General personal jurisdiction requires a far greater degree of contact with the forum state. The defendant's "affiliations with the State [must be] so continuous and systematic as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S.Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011)).

When, as here, the court decides a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff is required to present facts sufficient to make out only a prima facie case that jurisdiction exists. *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Once the plaintiff

has established such a prima facie case, the Court "must accept as true [the plaintiff's] uncontroverted allegations, and resolve in [the plaintiff's] favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Alpine View*, 205 F.3d at 215. However, the Court is not required "to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

## ANALYSIS

Dignity contends that this Court lacks both general and specific jurisdiction over it. Maner contends this Court has both. The Court begins with a review of the jurisdictional allegations in Maner's Complaint.

Maner alleges that Dignity is a corporation "authorized to do business in Arizona and headquartered in California," and that "work is conducted for its benefit" at the University of Texas Medical Branch in Galveston, Texas ("UTMB"), and at Reproductive Research Technologies, LP ("RRT"), in Houston, Texas. Maner also alleges that the "unlawful employment practices were committed within the jurisdiction of this Court." The bulk of Maner's factual allegations relate to his complaints about Garfield and Shi while he worked for Dignity in Phoenix before December 2010, but he does state that, before 2010, he traveled to remote "collaborative research locations," including Galveston and Houston, Texas, "at least one time per year." For an unstated reason, Maner then moved to Texas in December 2010. He alleges that he and Garfield agreed that he would work "remote[ly]" "in Texas, for an extended period of time, in three locations: [his] home, UTMB and RRT." From December 2010 through October

17, 2011, Maner alleges that he performed his duties for Dignity by "continu[ing] to email, telephone, and visit in person, locations at UTMB and RRT, where [Dignity's] work was performed under the supervision of Garfield." Then, in mid-August 2011, Garfield gave Maner an "extremely negative" performance review, and this performance review presumably related to the work Maner performed remotely in Texas but sent back to Garfield in Arizona.

In its motion to dismiss, Dignity presents affidavit evidence that it is a California corporation with its principal place of business in San Francisco, California. It describes itself as "operat[ing] more than 40 hospitals and health clinics located in California, Arizona and Nevada." It is not registered to do business in Texas, and it does not have a registered agent in Texas. As to Maner's contention that work is being performed for its benefit at either UTMB or RRT, Dignity plainly states—"[t]hese allegations are simply not true." Relying on an affidavit provided by Maureen Sterbach, its Arizona Service Area Vice President of Human Resources, Dignity further clarifies that it "does not own, operate or control any facilities at UTMB or RRT, and does not employ any individuals at either location." Finally, it states that, "no work is being performed 'for its benefit' at either location." Dignity does acknowledge that Garfield gave Maner permission to work remotely after Maner moved to Texas in December 2010, and it also acknowledges that its Information Technology department in Phoenix, Arizona "employs or contracts with" 29 individuals "who happen to reside in the state of Texas" and who provide "remote information technology services to Dignity Health" but that these individuals do not "work in any facility owned, operated or controlled by Dignity Health."

Maner's Response produced his own evidence in an attempt to controvert Dignity's. Maner submitted his own declaration, as well as an unauthenticated printout of Garfield's professional profile from the website LinkedIn.com, two sets of unauthenticated email chains, and five scientific research papers. Maner's declaration states that, as a Dignity employee, from "2010-2011," he "resided and worked in Galveston, Texas," and he "worked" weekly during that time with Dignity's "collaborators in Texas, for research conducted in Texas." Maner alleges that he collected data and analysis, wrote abstracts and manuscripts, and performed work "for the benefit of [Dignity Health]." Maner's statement regarding the precise details of this "work" are, perhaps purposefully, somewhat vague. For example, Maner states, for the first time, that he also regularly "worked" with third, fourth, fifth and sixth sites in Texas: The Center for Women's Healthcare ("TCWH"), in Houston, Texas; Christus Health's St. Elizabeth Hospital ("Christus") in Beaumont, Texas; Texas A&M University ("Texas A&M") in College Station, Texas; and the University of Texas Health Science Center ("UTHSC") in Houston, Texas. Again, Maner contends that this work was "for the benefit of [Dignity Health] projects" and "joint research" between Dignity and these institutions. For three of these sites, however, Maner does not actually affirm that he was physically present, instead, he merely states that he had discussions, or phone calls and emails, with their employees regarding joint research projects. Maner does state that he conducted research and collected data "several times per month" with Christus researchers in Beaumont, Texas, "in person and via email," and that he "visited" RRT and UTMB. He repeatedly states that Dignity collaborated with these institutions on "research projects for the

benefit of Dignity Health" and that he "worked" on these projects, while he lived in Texas, under Garfield's direction.

Dignity's Reply objected to Maner's documents as unauthenticated hearsay, and it also objected to Maner's declaration as conclusory and self-serving. Dignity then submitted a supplemental declaration by Sterbach, directly refuting the assertions in Maner's declaration. Specifically, she clarified that "no employee" of UTMB, RRT, TCWH, Christus, or Texas A&M "has ever performed work for Dignity Health's benefit" and that "no work is being performed for Dignity Health" at any of these institutions.

The Court is mindful that, at this juncture, it must "accept the plaintiff's uncontroverted allegations, and resolve in [his] favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016).

### A. This Court lacks general jurisdiction over Dignity.

The Court first begins with general jurisdiction. Here, the Court must ask whether Dignity's "'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman,* ––– U.S. –––, 134 S.Ct. 746, 761, 187 L.Ed.2d 624 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* ––– U.S. –––, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011)) (alteration in original). The Supreme Court has held that for a corporation, "the place of incorporation and principal place of business" are where it is "at home" and are thus paradigm bases for jurisdiction. *Id.* at 760. As the Fifth Circuit observed, "[i]t is, therefore, incredibly difficult to establish general jurisdiction in a forum other than the

place of incorporation or principal place of business." *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014). It is not enough to establish general jurisdiction based on a corporation having an employee who "currently resides in Texas for personal reasons and who works remotely from [his] home." *Transverse, LLC v. Info Directions, Inc.*, No. A-13-CV-101 SS, 2013 WL 3146838 (W.D. Tex. June 17, 2013).

In *Monkton*, the Fifth Circuit surveyed earlier cases and noted "[t]his court has declined to exercise general personal jurisdiction over a corporation where its most significant and continuous contact with the forum was having employees located there." *Id*. (citing *Bowles v. Ranger Land Sys., Inc.,* 527 Fed. App'x. 319, 321–22 (5th Cir. 2013)). In *Bowles*, the Fifth Circuit found that the Texas court lacked general jurisdiction over an Alabama corporation, even though it had six employees working at two military bases in Texas; its employees sometimes worked at or participated in training programs at a British military contractor's facility located in Texas; a small number of employees of the corporation underwent processing at a U.S. military facility in Texas before traveling to overseas assignments; the corporation paid unemployment and franchise taxes in Texas; and the corporation's website could be accessed in Texas and contained email addresses for several employees of the corporation. 527 Fed. App'x. at 321 (noting, "[t]hat a small number of Ranger's employees happen to live and work in Texas on projects related to Ranger's dealings with the military or with other defense contractors does not indicate a sustained business presence in the state."). Similarly, in *Johnston v. Multidata Systems Intern. Corp*., the Fifth Circuit held that general jurisdiction did not exist over a business with employees who worked remotely in the

forum state, but who did not work with customers within the forum state, who were not hired because of their residence, and who were permitted to remain in the forum state because they were able to perform their jobs anywhere in the world. 523 F.3d 602, 609 (5th Cir. 2008).

Those results are the same here—even resolving every relevant factual dispute in Maner's favor, this Court lacks general jurisdiction over Dignity.

**B. This Court lacks specific jurisdiction over Dignity.**

Next, the Court asks whether it may exercise specific jurisdiction over Dignity. "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Goodyear*, 131 S. Ct. at 2851 (citations omitted). Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Monkton*, 768 F.3d at 432-33 (citing *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)).

The Fifth Circuit provides a three-step analysis for specific jurisdiction: (1) whether the defendant has minimum contacts with the forum state, *i.e.,* whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *See, e.g., McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266 (5th Cir. 2006)). "The plaintiff bears the burden of satisfying the first two prongs; if

the plaintiff is successful, the burden shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271. This is a claim-specific inquiry. *McFadin,* 587 F.3d at 759 ("A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim."). Maner brings three claims against Dignity: unlawful termination based on sex discrimination, unlawful termination based on retaliation, and breach of contract. For each claim, the Court first asks whether Maner has alleged that Dignity has sufficient minimum contacts with Texas. If so, the Court next asks whether the cause of action arises out of the alleged forum-related contacts.

### 1. Does Dignity have Minimum Contacts with Texas?

Maner alleges that Dignity collaborates on joint research projects with Texas health care facilities and universities, and that he performed analysis and gathered data on some of these projects, before and after he moved to Texas in December 2010. He alleges that he visited some of these sites in Texas, and that he did so at the instruction of Garfield. His allegations that these were "for the benefit" of Dignity are vague and conclusory. For its part, however, Dignity admits that 29 of its remote IT professionals live in Texas.

Case law is clear that a plaintiff's own contacts with the forum cannot be used to demonstrate contacts by the defendant. *Monkton*, 768 F.3d at 433 (citing *Walden*, 134 S. Ct. at 1122). In the context of employment negotiations with a Texas resident, the Fifth Circuit has held that "a plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas,

the contract did not require performance in Texas, and the contract is centered outside of Texas." *Moncrief Oil International Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) (citing *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983)). Further, the Supreme Court has pointed out that the "minimum contacts analysis" here "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122.

The Fifth Circuit has "repeatedly held that the combination of mailing payments to the forum State, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004); *see also Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (holding that specific jurisdiction was impermissible by a Texas federal court where a defendant entered into a contract with a Texas plaintiff, sent final contract to plaintiff in Texas, sent checks to plaintiff's address in Texas, and engaged in written and telephone communications); *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985) (finding no indication that the nonresident defendant intended to avail himself of the privilege of doing business in Texas and hence no specific jurisdiction where nonresident defendant contracted with Texas residents, directed letters and phone calls to Texas, and shipped prototypes and products to Texas at request of Texas residents). Under these authorities, even accepting Maner's uncontroverted allegations, and resolving all of the factual disputes in his favor,

the Court finds that Maner has failed to establish sufficient minimum contacts for the exercise of specific jurisdiction.

### 2. Do Maner's Causes of Action "Arise out of or Result from" the Forum-Related Contacts?

Similarly, even if the contacts with Texas alleged by Maner were sufficient, none of the three claims that Maner asserts in this case "arise out of" these alleged contacts. Instead, the facts that are at the heart of Maner's discrimination and breach of contract causes of action are all centered elsewhere—where Garfield unlawfully discriminated in favor of his girlfriend, where Dignity's internal investigations took place, where Dignity's HR office received the report from Maner that complained of Garfield's alleged discrimination, where the decision to terminate Maner was made, and where Dignity's IP policies were formulated and followed. Maner alleges he was hired and worked for Dignity in Phoenix, Arizona. Even construed broadly, none of his allegations can be interpreted as alleging that these actions took place in Texas or that his causes of action arise out of or relate to the alleged minimum contacts. *See, e.g., Sciortino v. CMG Capital Mgmt. Group, Inc.,* CV 16-11012, 2016 WL 4799099, at *4 (E.D. La. Sept. 14, 2016) (finding that court lacked specific jurisdiction in breach of employment contract case, even where plaintiff alleged defendant knowingly entered into an employment agreement with a resident of Louisiana and foresaw that he would perform a majority of his work in Louisiana).

### 3. Is the Exercise of Personal Jurisdiction Fair and Reasonable?

Finally, the Court turns to whether the exercise of personal jurisdiction over Dignity is fair and reasonable. Where a plaintiff demonstrates sufficient "minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Nuovo Pignone, PsA v. Storman Asia M/V*, 310 F.3d 374, 382 (5th Cir. 2002).

Maner has failed to demonstrate that Dignity has the necessary minimum contacts with Texas, or that his claims arise out of or relate to the alleged contacts with Texas. Further, Dignity has provided evidence that the assertion of jurisdiction is unreasonable: Dignity does not have any offices in Texas, none of its relevant employee witnesses are in Texas, its HR department is in Phoenix, Arizona, and Maner was hired originally to work in its Phoenix facility. Accordingly, this Court does not find the exercise of personal jurisdiction over Dignity fair and reasonable.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion to dismiss for lack of personal jurisdiction.

SIGNED at Galveston, Texas, this 27th day of September, 2016.

_____
George C. Hanks Jr.
United States District Judge